Darren Wolf
Ashley M. Pileika
**LAW OFFICE OF DARREN WOLF, P.C.**
1701 N. Market Street, Suite 210
Dallas, TX 75202
Telephone: (214) 346-5355
Facsimile: (214) 882-4374
Darren@darrenwolf.com
Ashley@darrenwolf.com

Jeffrey Sandman
**SANDMAN LAW LLC**
5208 Magazine St., Ste. 364
New Orleans, LA 70115
Telephone: (978) 886-0639
Jeff@sandman-law.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| George Brogdon, et al.,<br><br>　　　　　　　　Plaintiffs,<br><br>vs.<br><br>Roman Catholic Archbishop of Los Angeles, et al.,<br><br>　　　　　　　　Defendants. | 4:20-cv-00566-TUC-JAS (MSA)<br><br>**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANTS' MOTION FOR SANCTIONS** |

## **DECLARATION OF ASHLEY M. PILEIKA**

I, Ashley Pileika, hereby declare:

1. I am an attorney, licensed in California, New York, Massachusetts, and the District of Columbia, and was admitted *pro hac vice* in this Honorable Court in December 2020.

2. I have been employed by the Law Office of Darren Wolf, P.C. since October 2021.

3. When this lawsuit was initiated in December 2020 and the Second Amended Complaint was filed in April 2021, I was employed by Forester Haynie PLLC.

4. I have firsthand knowledge of the extensive legal and factual research conducted before this lawsuit was initiated and the Second Amended Complaint was filed, as follows.

5. In 2017, I took a semester-long course at Notre Dame Law School taught by Judge John Robert Blakely of the Northern District of Illinois and attorney John Gallo, former global co-leader of Sidley Austin's white-collar practice, that focused on complex federal investigations and the Racketeer Influenced and Corrupt Organization Act (RICO).

6. Judge Blakey and Mr. Gallo covered the RICO statute in great depth and instructed how RICO could be creatively applied to prosecute "twenty first century crimes," such as human trafficking. *See* Exhibit A, attached hereto.

7. Further, Notre Dame Professor G. Robert Blakey, Judge Blakey's father, drafted the RICO statute in the 1970's and is regarded as the nation's foremost authority on RICO.

8. At the inception of this case, I sent Professor G. Robert Blakey an email and directly communicated with him to discuss how the federal and Arizona RICO statutes could be successfully applied to this case and other clergy cases.

9. I also contacted attorney Steven Rubino, who has been representing survivors of clergy abuse for decades.

10. Mr. Rubino successfully prosecuted a RICO case against the Diocese of Camden,

which Mr. Rubino discussed with me in great detail; Mr. Rubino then sent me the pleadings and drafts of the legal briefs he filed against the Diocese of Camden. *See, e.g.,* Exhibit B, attached hereto.

11. I also researched other recent cases in which the federal RICO statute has been applied against Roman Catholic entities, and I read legal articles and journals discussing the applicability of RICO in this context.

12. In addition to conducting this legal research, I conducted extensive factual research into our clients' perpetrators and their connections to the Archdiocese of Los Angeles and St. John's Seminary.

13. I personally spoke at length with George Brogdon and Jim Stein who both stated their perpetrator, Fr. Robert Gluch, was "sent to Arizona from California," and they believed Fr. Gluch had graduated from St. John's Seminary; I then fact checked this and was able to establish a prior lawsuit accused Fr. Gluch of sexually abusing children in California. *See* Exhibit C, attached hereto.

14. I personally spoke with Lauro Garcia who vividly recalled meeting Fr. Carlos Cocio in Tucson when Fr. Cocio was a seminarian student at St. John's; Lauro stated Fr. Cocio knew he wanted to become a priest, and Fr. Cocio used this to isolate and sexually assault Lauro in Tucson under the guise of recruiting Lauro to become a seminarian student at St. John's.

15. I personally spoke with Diana Almader-Douglas and Jane Doe who were sexually assaulted by Fr. Charles Knapp; Diana believed Fr. Knapp was sent directly to her parish from St. John's Seminary, which we were able to verify by accessing Fr. Knapp's LinkedIn

profile.

16. After corresponding with and viewing correspondences between the Diocese of Tucson and our clients, it was evident the Diocese of Tucson was not reporting allegations of clergy abuse to law enforcement, as its representatives indicated—coupled with the fact the Diocese of Tucson's website stated the Diocese of Tucson continued to receive graduates of St. John's Seminary, this raised serious concerns the Archdiocese of Los Angeles was continuing to funnel pedophiles into Arizona.

17. Diana was deeply concerned Father Knapp had not been criminally investigated and remained in active ministry with unrestricted access to children; I spoke by phone with Agent Edwards and Agent Macmanus of the F.B.I.'s Tucson Office who arranged a meeting between Diana and Jane Doe, along with detectives from the Cochise County Sheriff's Office.

18. After meeting with Diana and Jane Doe, the Cochise County Sheriff's Office opened a criminal investigation into Father Knapp. *See* dkt. 44-3.

19. I also directly corresponded with a local Tucson journalist interested in covering this case, who then sent a FOIA request to confirm whether the Diocese of Tucson had alerted law enforcement about the allegations against Father Knapp and to determine if Father Knapp had been accused of sexually assaulting minors elsewhere.

20. Along with paralegals and law students at Forester Haynie PLLC, I personally conducted hours of research utilizing archived newspapers, past lawsuits, and recent journalism to establish a connection between our clients' perpetrators and the Archdiocese of Los Angeles and St. John's Seminary prior to their ministering in Arizona. *See* Exhibits

C & D, attached hereto; dkt. 44 at ¶¶ 9-78.

21. Our research informed graduates of St. John's Seminary were routinely sent to the Diocese of Tucson during the time Fr. Gluch, Fr. Cocio, and Fr. Knapp would have graduated from St. John's Seminary and have been sent to the Tucson area; this time period overlapped with correspondences in which the Archdiocese of Los Angeles' leadership, including Cardinal Roger Mahony, purposefully directed pedophiles to leave the state of California and minister in Arizona to avoid criminal and civil liability. *See id.*

22. Because the Diocese of Tucson was knowingly accepting and harboring pedophile priests from the Archdiocese of Los Angeles, Fr. Gluch, Fr. Cocio, and Fr. Knapp fit into a well-established pattern of St. John's seminarians and pedophile priests sent by the Archdiocese of Los Angeles to the Diocese of Tucson.

23. When lawsuits were brought against the Archdiocese of Los Angeles in the early 2000s, thousands of pages of discovery were produced by the Archdiocese of Los Angeles that were not publicly released in their entirety.

24. Because this discovery is known to exist, it was our belief these documents would more clearly and directly establish the pattern of racketeering and evidence the Archdiocese of Los Angeles knowingly and purposefully directed predatory seminarians and priests— including Fr. Gluch, Fr. Cocio, and Fr. Knapp—to the Diocese of Tucson.

25. In sum, this lawsuit was initiated, and the Second Amended Complaint was filed, after months of thorough and continued investigation.

26. I asked attorney Jeff Sandman to argue for Plaintiffs at the hearing before this Honorable Court because he has prosecuted a number of RICO cases in federal court as a

former A.U.S.A, and I have worked with Sandman Law on other clergy cases and know them to be excellent attorneys.

27. All of Plaintiffs' attorneys advocated zealously to obtain meaningful relief and justice for survivors of childhood sexual abuse based on sound factual and legal investigation.

28. I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge.

Dated: February 25, 2022

/s/ Ashley Pileika
Ashley Pileika

*Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 25, 2022, I electronically transmitted the attached document to the Clerk's Office using the ECF System for e-filing and transmittal of a Notice of Electronic Filing to the ECF registrants on record in this matter.